UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO: 11-80187-RYSKAMP

ARMANDO ANTONIO CASTRO,

   PETITIONER,

v.

UNITED STATES OF AMERICA,

   RESPONDENT



FILED BY ___ D.C.

OCT 28 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 3582(c)OR, IN THE ALTERNATIVE JUDICIAL RECOMMENDATION FOR HOME CONFINEMENT PURSUANT TO 3621(b)(4)(B)

   Comes now, Petitioner Armando Antonio Castro, pro se in the above style action, respectively invokes the rule established in <u>Haines v. kerner,</u> 404 U.S.519(1972) (Holding pro se litigants to less stringent pleading requirements). Also see <u>Estelle v. Gamble,</u> 428 U.S. 106(1976). Petitioner Castro appreciates the court's accommodation.

PROCEDURAL HISTORY OF THE CASE

   On October 26, 2011, a federal grand jury indicted Petitioner for multiple firearms and narcotics offenses. On February 10, 2012, Petitioner pled guilty to several such offenses. The accepted Petitioner's plea and adjudged him guilty. The court sentenced him to 156 months in prison. Petitioner appealed. The Eleventh Circuit affirmed.

On February 24, 2015, Petitioner filed a §2255 motion. The Magistrate Judge issued a report recommending that Petitioner's claims be denied on the motion. The District Court adopted the report.

On April 26, 2017, Petitioner filed a "petition for release". The Magistrate Judge issued a report recommending that the petition be denied under U.S.C. §3582 or, the alterative, construed as a §2255 petition and dismissed for lack of jurisdiction. On July 17, 2017, the District Court adopted the report.

On June 15, 2018, the Petitioner filed a "Motion to Correct and Reduce Sentence" pursuant to Fed R. Civ Pro 60(b). In February 2019, the Magistrate Judge issued a report recommending that, because the motion attacks the merits filed pursuant to 28 U.S.C.§2255 and, further, the Court should dismiss the case for lack of jurisdiction because the Petitioner failed to obtain permission of the Eleventh Circuit of Appeals before filing a second or successive §2255 motion. On April 23, 2019, the District Court issued an order adopting the report, dismissing the §2255 motion, and denying a certificate of appealability.

Petitioner then filed a §2241. Petitioner attempted to transfer to Home Confinement pursuant to the "Eligible Elderly Offender" provision of the First Step Act. Copy these letters and other correspondence is attached.

The government disagreed stating that the Petitioner had failed to exhaust administrative remedies and that the "Eligible Elderly Offender" does not apply to him. This is 100% wrong and the Bureau of Prisons (BOP) through the warden at FCI Miami Camp is in violation of the current law.

Therefore, as explained in detail below, the Petitioner is now filing his motion for Compassionate Release since he does have "compelling and extraordinary circumstances" which makes him eligible to receive such.

Additionally, based upon the amount of time he has served to date, he is and has been eligible to receive the "Eligible Elderly Offender" reduction as provided for in The First Step Act because he has far exceeded the required 2/3 of his sentence. See Exhibit A.

## BACKGROUND OF THE PETITIONER

As everyone is aware, the world is going through a pandemic known as Covid-19. This virus has contributed to many health problems among individuals as well as many deaths. The Center for Disease Control (CDC) came out with guidelines which described who among the population is the gravest danger. Age and various health conditions being the key factors in making an individual "vulnerable". Additionally, where somehow resides can their individual situation more severe. The vulnerable individuals working and living in prisons, such as the Petitioner, are in imminent danger.

It is well documented through many news sources that prisons are fundamentally incapable of implementing the safety measures to stop the contagious and deadly virus and because of such, incarcerated people nationwide are dying as a result.

It is in the face of this global pandemic that the Petitioner, Armando Castro, pro se, respectively moves that the Court under 18 U.S.C.§3582 (c)(1)(A), section 12003(b) of the Cares Act and the Barr Memorandum of March 26, 2020 and April 3, 2020, respectively, modify his sentence to time served, or, in the alternative, make a non-binding recommending that the BOP transfer him immediately to home confinement and a period of supervised release for the remainder of his sentence pursuant to 3621 (b)(4)(B).

Currently, the Attorney General is urging prosecutors, the courts, and the prison system to release vulnerable inmates such as the Petitioner. The fact is the petitioner in the instant motion meets these conditions on all fronts. First of all, the Petitioner is an elderly inmate, 72 years old, who has a medical history inclusive of insulin-dependent (3 times daily) diabetes, hypertension, obesity, carpal surgery on his left hand, open reduction surgery on both elbows, major lumbar spine surgery with fusion on 3 herniated discs with six screws and two titanium bars. Additionally, he requires hearing aids in both ears, which the BOP as not provided, and walks with the assistance of a BOP provided cane and a knee brace for chronic inflammatory pain in his right knee as noted in Exhibit B , which is a copy of the current medical records, as of May 5, 2020.

Therefore, he immediately qualifies because of age and medical conditions that now exist. Additionally, the above paragraph documents that the Petitioner has a "compelling and extraordinary circumstance" as to why he should now be released from prison since the Petitioner is not going to flea and does not pose any danger to the community.

## STATEMENT OF THE FACTS RELATING TO THE COVID-19
## At FCI MIAMI FEDERAL PRISON CAMP

Petitioner initially requested compassionate release by the Warden at FCI Miami Camp in late 2019, prior to the COVID-19 pandemic, under U.S.C.§ 3582, due to his medical conditions. He was still denied in March of 2020.

The population of Miami Federal Prison Camp was informed in late March 2020, that all inmates were being quarantined and subsequently evaluated for qualification for transfer to home confinement because of the COVID-19 pandemic. In fact, on April 7, 2020, the Petitioner was informed by staff at the camp that he was on the first of inmates who was on the list for those inmates qualified to be transferred to Home Confinement due to the COVID-19. Qualification was based on many factors and included your inmate security classification, how many months of your prison have done, do you have any outstanding disciplinary actions, your overall prison record and if you had a place to go and live at if you were discharged.

This list came from Regional Office in Atlanta and only 30 out of a population of around 350 inmates were chosen, which the Petitioner was one of them. Unfortunately, in May 2020, the Petitioner was told by prison staff that he did not qualify due to a domestic violence charge from November 2003, which is many years prior to the instant offense, on his record. Subsequently, Petitioner submitted a renewed request for compassionate release on August 7, 2020 (see Exhibit A). It now has been over 30 days without a response from BOP staff and Petitioner now has the right to move forward to the Court to consider this motion.

The fact is there are now at least 43 confirmed cases of COVID-19 at Miami FCI in the inmate population and as many among staff, thus creating a sense of urgency around Petitioner's Castro's instant motion to this Honorable Court. The Petitioner contends that even the above numbers are grossly underreported. Petitioner also contends that there are numerous outbreaks and subsequent deaths in both federal and state prison facilities. These are increasing at an exponential rate and many are completely unprepared for what this pandemic holds.

It is also the Petitioner's own experience that inmates at Miami FPC are denied antibacterial soap, cleaning materials and even paper towels to dry their hands. 2-ply canvas masks face coverage are only randomly given out and temperature checks are even done less often. In fact, almost no inmates within FPC general population have received an actual COVID-19 test.

## ARMANDO ANTONIO CASTRO IS ENTITLED TO COMPASSIONATE RELEASE

Federal Courts are forbidden, as a general matter, to "modify a term of imprisonment once it has been imposed, 18 U.S.C.§3582 (c); but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S.522, 526 (2011). The compassionate release statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C.§3582 (a), it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such reduction is consistent with applicable policy issued by the Sentencing Commission." 18 U.S.C.§ 3582 (c)(1)(A)(i). Under the recently enacted First Step Act, defendants serving their sentences may move the Court for compassionate release. Gotti ,2020 WL 497897, at *2, United States v. Gross, No 15-CR-769(AJN), 2020 WL 1673244, at *2(S.D.N.Y. Apr 6. 2020).

This in turn means that under 18 U.S.C.§3582 (c)(1)(A), a sentencing court, on a motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Act of 1984.

The Bureau uses 18 U.S.C.§3582 (c)(1)(A) in particularly compelling circumstances which could not reasonably been foreseen by the Court at the time of sentencing.

18 U.S.C.§3582 (c)(1)(A) was amended by the First Step Act of 2018. The changes include the following:

- For the purposes of the new program statement, the terms "compassionate Release" and "reduction in sentence" are used interchangeably.
- Also, in deciding whether to file a motion either 18 U.S.C.§3582, the bureau of Prisons should consider whether the inmate's release would pose a danger to the safety of any other, or the community.

The fact is Congress passed, and President Trump signed, the First Step Act of 2018, which, among other things, changed the procedures and ultimately the criteria for when a person in federal prison can seek a sentence reduction under the Compassionate Release Statute in 18 U.S.C.§3582 (c)(1)(A). After the changes made in the First Step Act, federal prisoners can file a motion even if the BOP fails to respond or even in the face of the BOP opposition to a sentence reduction.

Therefore, based upon the above discussion, inmate Armando Antonio Castro, has filed his request for Compassionate release under 18 U.S.C.§3582 (c)(1)(A) since there are particularly extraordinary and compelling arguments which could not have been reasonably foreseen by the court at the time of sentencing.

It is therefore the appropriate time to file this motion since the Petitioner has fully exhausted all administrative remedies and now has no other choice but to proceed to this court for relief.

## LEGAL ARGUMENTS

1. Petitioner has sought administrative remedy during this crisis without response in over 30 days. This Honorable Court should waive the requirement under 18 U.S.C.§3582 (c)(1)(A) because of the impending peril posed by COVID-19 to the Petitioner and those deemed "at risk and vulnerable".

   Before a compassionate release motion can be considered on the merits, the defendant must exhaust administrative remedies. The First Step Act provides that the courts can consider compassionate release motion brought by incarcerated defendants only if one of the two requirements are met. First, courts can consider such motions "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C.§3582(c)(1)(A). Second, courts can consider such motions after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. The earlier of these date's controls; as soon as one of these requirements is met, the exhaustion requirement is satisfied. Id

   The law now simply states thirty days after a prisoner has submitted his request to the Bureau of Prisons , "a court may then "reduce the term of imprisonment" after finding that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the " Sentencing Commission". United States v. Ebbers, 2020 WL 91399, at *4.02-CR-1144 (VEC) (ECF No. 384) (S.D.N.Y. Jan 8, 2020).

   The instant case, the second trigger point was satisfied which means Petitioner Castro did meet the requirement of the lapse of 30 days as noted earlier in the motion. Additionally, since this is an emergency, a pandemic, this Court needs to waive the exhaustion requirement under 18 U.S.C.§3582 (c)(1)(A), as this will almost assuredly exacerbate an impending public health catastrophe in our jails and prisons, while posing a real danger to the Petitioner. See generally Washington v. Barr, 925vb F. 3d 109, 120, (2nd Cir. 2019)("undue delay, if it in facts results in catastrophic health consequences, could make exhaustion futile").Federal Courts have found that they can hear

7

applications prior to the expiration of 30 days(or the exhaustion of administrative remedies) if there is an emergency. See United States v. Huneeus, No. 19-Cr-10117, ECF Docket No 642 (D.Mass. Mar. 17,2020)(Granting a defendant's emergency motion based on COVID-19, see also United States v. James Arberry, No. 15-CR-594 (JPO), ECF Docket No. 84(S.D.N.Y. Apr 10, 2020)(Where a child pornography offender was both allowed waiver of the exhaustion requirement and granted release to home confinement pursuant to the above and the "extraordinary and compelling" reasons warranted by COVID-19).

This accord with the general administrative law principles and the exception to the administrative exhaustion requirements in numerous statutory schemes, see e.g. Hendricks v. Zenon, 993 F.2d 664, 672 (9th Cir 1993)(waiving the requirements to exhaust administrative remedies where "exceptional circumstances of peculiar urgency are shown to exist.") (Citing Grunberry v. Greer, 481 U.S. 129 (1987); Washington v. Barr, 925 F. 3d 109, 119(2nd Cir 2019) (Finding that administrative exhaustion requirements are waived if delay would cause irreparable injury).

"Application of the exhaustion doctrine is "intensely practical" and should be guided by the policies underlying the exhaustion requirement," Brown v. City of New York, 476 U.S. 467, 484, (1986)(quoting Mathews v. Eldridge, 424 U.S. 319, 332 (1976). These policies were articulated by the Supreme Court in Weinberger v. Salfi, 422 U.S.749 (1975). Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct errors; to afford the parties and the courts the benefits of its expertise, and to compile a record which is adequate for judicial review. 422 U.S. 765.

Conducting an "intensely practical" analysis of these policies in the context of the Social Security Act's exhaustion requirement, the Supreme Court held in Brown that courts "should be especially sensitive" to irreparable and severe medical harm resulting from blind adherence to a claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484 (

8

discussing 42 U.S.C.§ 406); See also <u>Reafeedie v. INS,</u> 880 F.2d 506 (D.C. Cir 1989).

No question, this is an instance where side-stepping strict adherence to the exhaustion requirements is necessary, otherwise, by the time an inmate completed said process, he very well could have been one of those affected and deceased.

In either event, Mr. Castro's multiple requests for compassionate release and transfer to home confinement prove that he exhausted any remedies available to and cognizable by a pro se litigant. As such, the Court now rightfully consider these pleas for help.

2. Petitioner satisfies the standards for compassionate release pursuant to 18 U.S.C.§3582; a motion for compassionate release should be granted where a Court finds that the defendant shows by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under 18 U.S.C.§ 3582.

It is well documented that the COVID-19 virus had a major impact on the Federal Prison and as such, many inmates were sent home. Unfortunately, Petitioner Castro was not one of them even though he was in the first group of qualifiers. It was later determined that his domestic violence issue with his former wife was considered a disqualifier even though his wife signed a notarized petition indicating that she no longer felt the Petitioner was a threat to her. A copy of this affidavit and discussions concerning are attached as Exhibit C.

If one looks deeper into his domestic violence case they will see that this was just a case of a wife with a quick trigger (temper) to call the police of no more than a normal domestic argument between a married couple. There was absolutely no violence alleged in this incident. However, that did not make a difference and the Petitioner was inappropriately penalized for his actions.

Unfortunately, this branded the Petitioner and has throughout his incarceration period. This exists today even though the Petitioner went through the effort to have it expunged as well get a sworn notarized affidavit from his former spouse that she feels he is no longer a threat to her. See Exhibit C.

In contrast, what the court should now do is look at the Petitioner who is the person in front of them today. He is at an advanced age of 72 and is in bad health. This is documented in detail in the attachments describing his current medical condition. Additionally, the court should also look at the fact that the petitioner is now rehabilitated and is a changed man. Nine years behind bars can do that do someone and it has here.

10

In would seem apparent that the Petitioner should qualify for compassionate release on his age and health reasons alone. In fact, just recently District Judge Marlina Marmolejo resentenced Conrado Cantu to time served. See, United States v. Cantu. No. 1:05-CR-458-1 2019 WL 2498923 (S.D. Texas, June 17, 2019). Judge Marmolejo did so after finding that Cantu presented "extraordinary and compelling reasons" for a sentence reduction under the compassionate release statute in the First Step Act. Because of that she concluded:

Thus, the correct interpretation of §3582 (c)(1)(A)- based on the text, statutory history and structure, and consideration of Congress's ability to override any of the commission's policy statements "at any time", Mistretta v. United States, 488 U.S. 361, 394 (1989)- is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. §1B1.13 cmt.n.(A)-(C) warrant granting a release.

Many believe that Congress intended for compassionate release to act as a second look provision in 1984, when it enacted the compassionate release provision while at the same time abolishing federal parole. The problem was Congress handed over the triggering mechanism to the Director of the Bureau of Prisons, which gave the director the power to set the criteria no matter what the U.S. Sentencing Commission said.

Congress fixed that problem in the First Step Act, by allowing federal judges to have the authority to reduce sentences even if the BOP director finds that the extraordinary and compelling reasons are not present. In addition, in U.S.S.G. § 1B1.13 cmt.n.1 (D) is inconsistent with these congressional changes and thus no longer binding on federal judges.

It should be again noted that Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C.§ 3582 as part of the Comprehensive Crime Control Act of 1984. Section (C) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest which is directly relevant here.

A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a such a reduction." 18

11

U.S.C. § 3582 (c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. Id.

Congress never defined what constitutes an "extraordinary and compelling reasons" for resentencing under §3582(c). But legislative history gives an indication of how Congress thought the statute should be employed by federal courts. On of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." Rep No. 82-225, at 52, 53 n 74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing.

The committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction in an unusual long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

The idea was rather than having the Parole Commission review every federal sentenced focused only on an offender's rehabilitation, Congress decided that 3582 could and would enable courts to decide, in individual cases, if there is justification for reducing a term of imprisonment." Id at 56.

Congress intended for the situation listed in §3582 (c) to act as "safety valves for modification of sentences." Id at 121. That enabled sentence reductions when justified by various factors that previously could have been addressed in the (now abolished) parole system. The safety valve would "assure the availability of specific review and reduction to a term of imprisonment for "extraordinary and compelling reasons" and (would not allow courts) to respond to changes in the guidelines." Id. Noting that this approach would keep "sentencing power in the judiciary where it belongs",

rather than with a federal parole board, the statute permitted" later review of sentences in particularly compelling situations." Id.

Congress thus intended to give federal sentencing courts an equitable power that would be employed on individualized basis to correct fundamentally unfair sentences. And there is no indication that compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep. No. 98-225 at 55-56.

Furthermore, as of July 20, 2020, the BOP reported 916 grants of federal sentence reductions for §3582 (c)(1)(A). On the BOP web page on the First Step Act suggests that roughly 70 sentence reductions are being reported by federal district courts each week. This includes the Florida case <u>United States v. Hendry</u>, No. 2:19-CR-14035-Rosenberg, 2020 WL 4015487 (SD Fla. July 16, 2020) and <u>United States v. Torres,</u> No. 19-CR-20342-Bloom, 2020 WL 4019038 (SD Fla. July 14, 2020).

Since the Petitioner has satisfied the exhaustion requirement so the court can now focus on its analysis of the remaining considerations under §3582 (c)(1)(A)- namely, the relevant §3553(a) factors.

The applicable §3553(a) factors include, among others:" (1) the nature of circumstances of the offense and the history and characteristics of the defendant" as well as "(2) the need for the sentence imposed- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal punishment for the offense;(c) to protect the public from further crimes of the defendant." 18 U.S.C.§3553(a).

These factors were enumerated in the landmark Supreme Court case <u>Jason Pepper v. United States,</u>.09-6822, which was argued December 6, 2010 and decided March 2, 2011. The court decided that when a defendant's sentence has been set aside for an appeal, a district court at resentencing may consider evidence of the defendant's rehabilitation, and such evidence may, in appropriate cases, support a downward variance from the now-advisory guidelines.

Consistent with this principle that "the punishment should fit the offender and not merely the crime, Williams v. New York, 337 U.S. 241, 247, the court observed a consistent and uniform policy" under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within fixed by law, id., at 246, particularly, id., at 247,. That principle is codified at 18 U.S.C. §3661, which provides that "no limitation shall be placed on the information" a sentencing court may consider," and at §3553 (a), which specifies that sentencing courts must consider, among other things, a defendant's "history and characteristics," § 3553(a)(1).

Also specified in this case that post sentencing rehabilitation evidence. The plain language of §3661 makes clear that there is "no limitation on background, character, and conduct" information, and a subsequent resentencing. In addition, post sentencing rehabilitation evidence may be highly relevant to several § 3553(a) factors that district courts are required to consider at resentencing. Most fundamentally, that evidence provides the most up-to-date picture of that defendant's "history and characteristics."

Likewise, in the instant case, this court can look at the person who stands in front of them today. He has put in over 9 years in prison. That is a long time and rather than complain about his lengthy sentence, the Petitioner took a different approach. He changed his outlook on life. He spent much of his time in types of educational endeavors including classes in business, computers, language, and parenting. He was active in his religious community and went to services on a weekly basis.

Furthermore, when he was at FCI Miami low, he was part of the Alternative Inmate Network (ICAN), which was a program designed for those inmates who wanted to make a change in their lives. It was in fact a separate unit which included taking 8 intensive classes that lasted from six to eight weeks and involved doing out of class homework as well as having a written or oral final exam. The classes included 7th Habit by Stephen Covey, 8th Habit by Stephen Covey, etiquette, values, living free, psychology of incarceration, goals and criminal thinking errors.

The whole purpose of the program was to change one's way of thinking and approaching life. The Petitioner not only took but excelled in these courses. In also assisted many inmates in translations from Spanish to English since he was very fluent in both languages.

The Petitioner always had a job while incarcerated and worked as an orderly as well as in recreation. More important during all this time in prison, he never once received an incident report, which is outside the norm for an environment where receiving such happen on a daily.

During this period, he maintained a close relationship with his children who visited often before the COVID-19 Virus. He also communicates with his wife through their children and they have worked together to handle family issues.

No question, he has been an ideal inmate. Despite his domestic violence issue, he still was approved to transfer to "out custody" in a camp setting in Miami, Florida. That shows that the Petitioner is ready to re-enter the outside world.

That fact coupled with the impact of COVID-19, which would qualify him for compassionate release based on his age and medical condition alone. That is why the Petitioner filed this motion.

Finally, on to be forgotten, the Petitioner already qualifies for the early elderly release since he has completed more than 2/3 of his sentence. In fact, the Petitioner has completed nearly 80% of his sentence. This means by law as enumerated in the First Step Act Section 602, the Petitioner does qualify for release. It should be noted that this section has no exclusion for the crime committed or the defendant's criminal history. As such, the domestic violence case in question has no effect on not allowing his transfer to Home Confinement.

3. Federal Courts have granted release for vulnerable inmates such as Petitioner Castro based on health threat created by COVID-19; <u>United States v. Kelly,</u> and other cases which demonstrate that this pandemic creates and "extraordinary and compelling reason" warranting a reduced sentence.

Petitioner Castro is an infirm and elderly inmate who has COVID-19 risk factors articulated by the Center for Disease Control and Prevention (CDC) and should be granted compassionate release, or, in the alternative, transferred to home confinement and/or furlough to be cared for and protected by his family. Federal Courts across the country have granted releases based on the serious threat COVID-19 poses for inmates with underlying medical conditions. The CDC has advised vulnerable members of the population, like Petitioner Castro, to avoid crowds and self-isolate.

As noted earlier in this motion, Petitioner Castro is an elderly inmate (72 years old) who has a medical history inclusive of insulin-dependent diabetes, hypertension, obesity, carpal surgery on his left hand, open reduction surgery on both elbows, major lumbar spine surgery with fusion on 3 herniated discs with six screws and two titanium bars. This places him among the "vulnerable inmates" contemplated by the Department of Justice. As recognized by the Attorney General, the confined conditions that the Petitioner is currently in are a stark contrast to the conditions recommended to save his life. As explained by one district judge:

"Those detained in jails and prisons face a particularly grave danger. Realistically, the best -perhaps the only- way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible. Many jurisdictions have begun doing just that. So, too, have judges begun granting home confinement to individual cases where the law allows them to do so. <u>United States v. Nkanga</u>, No. 18-CR-713(JMF) (S.D.N.Y. Mar 31, 2020). See also "A Storm is Coming: Fears of Inmate Epidemic as the Virus Spreads in Jails, NY Times (Mar 20,2020).

Lemarcus Kelly, a 30- year-old inmate at Oakdale FCI, was granted compassionate release and resentenced to "time served" with 36 months of supervised release. This was true even though he was not at an increased vulnerability to COVID-19 (no underlying health concerns and relatively young) and had pled guilty to one serious violent crime. The court noted his good time conduct, jail credit, programming, completion of educational courses and clean conduct record (except one offense early in his sentence) proved that he did not pose a risk to others or the community if released. (See United States v. Kelly, S. Dist. Mass).

Petitioner contends that this is pertinent as well to the instant case. The lethal threat that COVID-19 poses to the Petitioner health weighs heavily in favor of his release. Numerous courts both here in this district and around the country have recognized that the threat posed by COVID-19 to inmates against keeping them in custody regardless of any "criteria" set forth by the BOP.

I have enclosed Exhibit D a list of 28 cases not including the known cases of United States v. Manafort, and as well as United States v. Cohen , to further substantiate my position. These prisoners were all had their sentence reduced via compassionate release or in the alternative were transferred to Home Confinement.

## CONCLUSION

This Honorable Court should grant this motion for compassionate release due to COVID-19 because Petitioner satisfies the standard due to "extraordinary and compelling reasons". He is an individual who is at high risk and could very easily become infected and suffer severe illness or worse from the COVID-19 pandemic.

In the alternative, pursuant to 3621 (b)(4)(B), the court can recommend him for home confinement and transfer via furlough as soon as possible.

"Respectively submitted",

*A. Castro*
Armando Castro

97595-004