# EXHIBIT C

Exhibit C

State of Florida  
County of Palm Beach

Case No.: 11-80187-CR

## AFFIDAVIT OF ESTHER A. CASTRO

I, Esther A. Castro being of sound mind and body hereby attest to the following:

1. I was married to Armando A. Castro on August 9, 1986. From this marriage we have two children. Virgil Castro is age 27 and is currently enlisted in the United States Air Force. He is stationed at Vanderberg Air Force Base in Lompoc California. The other son is Noel Castro, Age 23. He currently resides in Ocala Florida and is employed as a fire fighter/paramedic.

2. I have always known my husband to be a hard working man and a good father. At the time of Armando's arrest, we were working on marriage counseling so we could continue our relationship.

3. I do acknowledge that the domestic problems we had was both our faults. I also realized I contributed to the situation and believed I needed counseling, as well as my husband. At the time of the restraining order, I did submit a petition for a dissolution of marriage paperwork, but afterwards I withdrew it.

4. I understand there is currently a misunderstanding pertaining to eight restraining orders filed by me against Armando. Let me be very clear about this. I filed a restraining order. Shortly after filing it, I recinded the restraining order. I NEVER filed eight restraining orders against Armando. Most of our stress between Armando and I was due to our business going through a financial crisis, mostly related to the poor economic climate in the country at that time. The stress brought on many unnecessary fights. Fortunately, we will be able to keep our friendship together during these difficult times.

5. I am very supportive of Armando and always will be. I have a special place for him in my mind and will always keep communication with him. We know each other for 30 years. I have visited Armando during his incarceration on several occassions, since October 26, 2011. I visited him when he was in West Palm Beach County Jail, Miami Detention Center and at FCI Miami where he is now. I have visited him both alone and with my son's and our grandson.

6. The past is the past and even though we are currently going through a divorce, I will remain close to Armando. Again, I would like to specify that I went to the courthouse in West Palm Beach and submitted a complete dismissal to the judge, which was granted, pertaining to the restraining order against Armando Castro. As far as I am concerned, there is no restraining order against Armando from me.

declare under penalty of perjury that the above matters are true and correct to the best my knowledge. I hereby certify, that the foregoing document was subscribed and sworn is __3__ day of __Sept.__ in the year 2013.

commission expires on __11-30-2016__. Signature of Notary Public __Cheryl Kiser__

__Esther A. Castro Signature__

CHERYL A. KISER  
Notary Public - State of Florida  
My Comm. Expires Nov. 30, 2016  
Commission # EE 850622  
Bonded Through National Notary Assn.

**INMATE REQUEST TO STAFF**

**Federal Bureau of Prisons**

| To: UNIT MANAGER Ms. FAHIE | Date: 06-21-2020 |
|---|---|
| From: Armando Castro | Register Number: 97595-004 |
| Work Assignment: RECREATION | Unit: J1-2 |

SUBJECT:

<u>Request for correction to Inmate Castro's SENTRY File</u>

  There is a mistake in my file which I am requesting be corrected. I recently spoke with Ms. Gonzalez, who informed me that I have 8 domestic violence issues on my file, which would preclude me from home confinement. In actuality, it should only be one incident. I ran into this misunderstanding when I was at Miami FCI Low; my case manager, Ms. Beardens, from unit B, helped me out to get transferred to the Camp. In 2015 I had to reach out to the West Palm Beach police dept. to get this clarified. My ex-wife of 7 years and I were going through a divorce in 2003, and a restraining order (misdemeanor) no contact order. We owned a jewelry store and a pawn shop and she went to keep me from my businesses. The police order says nothing about any violence or damage inflicted. After this was clarified, I was approved for transfer to the camp in 2017. Please reach out to Case Manager Beardens, if necessary, to verify as I do not want to have this discrepancy affect my programing or possible release to home confinement. Thank you for your time and attention to this matter.

(Do not write below this line)

DISPOSITION

Signature Staff Member          Date

PLEASE UP DATE MY RECORD. PART 2.

THE NEXT DAY AFTER MY ARREST, I GOT RELEASED ON NOV. 24-2020. WITH NO BOND, NO FINGER PRINTS, NO JUDGE AND NO CHARGES.

ALSO IN YEAR 2015 I WAS IN F.C.I. MIAMI LOW, AND WANT TRANSFER TO MIAMI CAMP. THE CASE MANAGER IN MIAMI LOW, MRS. BEARDENS IN BISCAYNE UNIT, GOT PROOF OF MY ONLY ONE INCIDENT OF A DOMESTIC DISPUTE. FROM A AFFIDAVIT SIGNED AND NOTARIZED BY MY NOW EX WIFE ESTHER A. CASTRO.

AND WITH THAT AFFIDAVIT PROOF MRS. BEARDENS, TRANSFER ME TO MIAMI CAMP IN YEAR 2017.

AND THIS IS HOW ONE CASE GOT MISCONSTRUED INTO 8 CASES. IN MY 48 YEARS IN THIS COUNTRY, THIS IS MY FIRST OFFENSE AND ONLY CONVICTION.

WITH 9 YEARS IN THE BOP CUSTODY I DON'T HAVE: NO INDICIPLINAR INFRACTIONS, NO WRITE UPS, NO SHU, NO FIGHTS, NO CONTRABAND NO ESCAPE ATTEMPT, AND NO VIOLENCE.

I AM RATHER A FRIENDLY, EASYGOING FUNNY GUY, AND SOMETIMES GOOFY.

TRULINCS 97595004 - CASTRO, ARMANDO - Unit: MIA-J-A

---

FROM: 97595004
TO: Camp J Unit Team
SUBJECT: ***Request to Staff*** CASTRO, ARMANDO, Reg# 97595004, MIA-J-A
DATE: 08/03/2020 07:12:18 PM

To: Unit Manager Fahie
Inmate Work Assignment: Recreation

Ms. Fahie,
I have also handed in a paper copy of this request.

**Please update my record with the following information***

I was arrested on November 23, 2003 for domestic violence (misdemeanor) which was then reduced to a restraining order because there was never any violence. No pushing, no hitting, no blood. We were going through a divorce. We owned a house, a jewelry and pawn shop store, and she wanted me out of the house and business. She went to the court and got a no violence contact. Meaning: she works 3 days and I work 3 days. Any time we argued, she would call the police, and every time the police responded to one of these calls, they had to file a police report for domestic violence. But neither of us got arrested, we just talked to the police.

The next day after my arrest, I got released on November 24, 2003 with no bond, no finger prints, no judge and no charges. Also in the year 2015 when I was at FCI Miami, I wanted to transfer from the Low over to the camp. The case manager over at Miami Low, Mrs. Beardens in Biscayne Unit, got proof of my only one incident of domestic dispute from an affidavit signed and notarized by my now exwife, Esther A. Castro (I have a copy of this document if needed.) With that document, I was transferred by Mrs. Beardens to the Camp in the year 2017. This is how one case got misconstrued into 8 cases. In my 48 years in this country, this is my first offense and only conviction. With 9 years in the BOP custody, I don't have any disciplinary infractions, no write ups, no SHU time, no fights, no contraband, no escape attempts and NO VIOLENCE. I am rather a friendly, easy going, funny guy and sometimes goofy. Please update my record so this doesn't affect me going forward.

Thank you for your time and consideration.

RULINCS 97595004 - CASTRO, ARMANDO - Unit: MIA-J-A

--------------------------------------------------------------------------------

ROM: Warden
O: 97595004
JBJECT: RE:***Inmate to Staff Message***
ATE: 06/23/2020 11:52:02 AM

his is something you will have to clarify with the courts.

>> ~^!"CASTRO, ~^!ARMANDO" <97595004@inmatemessage.com> 6/15/2020 7:42 PM >>>
o: Warden,AW.Camp.administrator.J.unit team,Mrs.Fahie
mate Work Assignment: rec.

ease correct this mistake in my file:
 year 2015, I was at Fci. Miami low, in unit "B" Bicscayne and I apply for a transfer to miami satellite camp. And was denied
cause, I alledgelly have 8 times of domestic violence in my file.My case manager Mrs. Bearden was helping me get
ansferred to the camp. And my Attorney have to go to West Palm Beach court, to get proof that is was actually only one
cident of domestic violence, restraining order (misdemeanor) no contact, no hiting, no pushing. And send it to Mrs. Bearden.
nd that was the only way I got transferred to satellit camp. At that time we owned a jewelry and a pawn shop store (2003) in
est palm beach,and we were going tru a ugly divorce, we argue a lot and she didn't want me in the house or business. We
illed the West palm beach police dept. 8 times, and they file their report as 8 incidents of domestic violence. In year 2005 my
fe fired a .038 calib pistol at me and my niece inside the store. She was arrested and taken to wpb. county jail. I did not
essed charges (I was in love.) I want just to clarify this issue, now my exwife for 7 years. hope this dont affect any relief for
ome confinment Gracias Castro A.

BP-A0148
JUNE 10
U.S. DEPARTMENT OF

**INMATE REQUEST TO STAFF** CDFRM

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Unit MANAGER MRS. FAHIE | DATE: 08-03-2020 |
|---|---|
| FROM: CASTRO ARMANDO | REGISTER NO.: 97595-004 |
| WORK ASSIGNMENT: RECREATION | UNIT: J-1/2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

PLEASE UPDATE MY RECORD: I WAS ARRESTED IN NOV. 23-2003 FOR DOMESTIC VIOLENCE, (MISDEMEANOR) AND REDUCED TO RESTRAINING ORDER. BECAUSE NEVER WAS ANY VIOLENCE. NO PUSHING, NO HITTING, NO BLOOD. WE WERE GOING THRU A DIVORCE. WE OWNED A HOUSE, A JEWELRY AND PAWN SHOP STORE, AND SHE WANTED ME OUT OF THE HOUSE AND BUSINESS. SHE WENT TO COURT AND GOT A NO VIOLENCE CONTACT. MEANING SHE WORK 3 DAYS AND I WORK 3 DAYS. ANYTIME WE ARGUE, SHE OR ME CALL THE POLICE. AND EVERYTIME THE POLICE CAME FOR A PHONE CALL, THEY FILE A POLICE REPORT FOR DOMESTIC VIOLENCE. BUT NEITHER OF US GOT ARRESTED. WE JUST TALKED TO THE POLICE. PLEASE SEE ATTACHED. PART 1

(Do not write below this line) A. Castro

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File;  Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-3148.070 APR 94

i!'li!ftE IN SECTION 6 UNLESS APPROPRIATE FOR fm!lfiiJAl!: OLDER

**SECTION 6**

# EXHIBIT D

EXHIBIT D

LIST OF CASES WHERE COMPASSIONATE RELEASE GRANTED

1. <u>United States v. Oreste</u> , No. 14-CR-20349-Scola, Dkt. No 200 (S.D. Fla. Apr 6, 2020)(granting release where defendant is not a danger to the community, was convicted of a non-violent fraud offense with no history of violence; based on the increased risk of death posed by COVID-19 pandemic and the [the Defendant's] severe health conditions, the court finds that the "extraordinary and compelling reasons warrant [his] release.").
2. <u>United States v. Grabman</u> , No 18-CR-20989-Altman, Dkt No. 397(S.D. Fla. Mar 29, 2020)(Magistrate Judge Goodman releasing Defendant convicted after a trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the Defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate.
3. <u>United States v. McLean,</u> No. 19-CR-380, (D.D.C. Mar 28, 2020)("The facts and evidence that the court previously weighed in concluding that Defendant posed a danger to the community have not changed- with one exception. That one exception -COVID-19- however, not only rebuts the statutory presumption of dangerousness, see 18 U.S.C.§3582 3142 (e), but tilts the balance in favor of release.").
4. <u>United States v. Harris</u>, No. 19-CR-356(D.D.C. Mar 26, 2020)("The court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by the Defendant's release to home confinement on … strict conditions.").
5. <u>United States v. Jaffe,</u> No. 19-CR-88(D.D.C. Mar 26, 2020) (Releasing Defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's health care

resources, the court is ... convinced to expand poses a greater risk to community safety than posed by the Defendant's release to home confinement.").

6. United States v. Hakin, No, 4:05-CR-40025-LLP, Dkt. No. 158 (D.S.D. Apr 6, 2020) (reducing sentence by an extra 40 months under the First Step Act in light of the extreme danger posed by COVID-19).
7. In re:Manrique, 2020 WL1307109(N.D. Mar 19,2020)("The risk that the vulnerable person will contact COVID-19 while in jail is a special circumstance that warrants bail").
8. United States v. Foster, No. 1:14-CR-324-02, Dkt. No. 191(M.D.PA Apr 3, 2020)(noting the "unprecedented" circumstance facing "our prison system" and finding that COVID-19 is an extraordinary and compelling basis for release; indeed "no rationale is more compelling or extraordinary.")
9. United States v. Resnik, 2020 WL 1651508(S.D.N.Y. Apr 2, 2020)(releasing a prisoner who is, for all practical reasons deserving of compassionate release during normal times, is all by mandated in the age of COVID-19.")
10. United States v. Perez, No 1:17-CR-513-AT, Dkt No. 98(S.D.N.Y. Apr 1,2020)(granting compassionate release where "the benefits of keeping Perez in prison for the remainder of his sentence are minimal, and the potential of the consequences of doing so are extraordinary grave.")
11. United States v. Rodriquez, No. 2:03-CR-271-AB, Dkt No. 135(E.D. Pa, Apr 1, 2020) (granting release after finding risk factors for COVID-19 constitute extraordinary and compelling reason and that prisons are "tinderboxes for infectious disease.")
12. United States v. Williams, No. 3:04-CR_271-AS-MCR-CJK, Dkt. No. 91(N.D. Fla. Apr 2020) (compassionate release in light of severe risk posed to defendant by COVID-19).
13. United States v. Gonzalez, No 2:18-CR-232-Tor, DKt. No.634(E.D.Wash. Mar 31, 2020) (releasing defendant one month into 10 month sentence in light of medical issues; ordinarily, these conditions would be manageable but "these are not ordinary times.")
14. United States v. Bolston, Case No. 1:18-CRF-381-MLB, Dkt No. 20(N.D. Ga. Mar 30,2020) (releasing defendant in part because the "danger inherent in his continued incarceration at the R.A. Deyton Detention Facility.... During the COVID-19 outbreak justify immediate release from custody.")

15. <u>United States v. Powell,</u> No. 1:94-CR_316-ESH, Dkt. No.98(D.D.C. Mar 28, 2020) (granting unopposed motion for compassionate release in light of COVID-19 and finding it "would be futile" to require Defendant to first exhaust in light of open misdemeanor case.)
16. <u>United States v. Campagna,</u> 2020 WL 1489829(S.D.N.Y. Mar 27, 2020) (compassionate release granted).
17. <u>United States v. Copeland,</u> No. 2:05-CR-135-DCN(D.S.C. Mar 24, 2020) (Granting First Step Act relief to Defendant in part due to "congress" desire for courts to release individuals the age the Defendant is, with the aliments that Defendant has during the current pandemic.")
18. <u>United States v. Underwood,</u> Case No. 8:18-CR-201-TDC, No. 179( Mar 31, 2020) ( encouraging release to furlough of elderly Defendant in BOP custody because, even though no positive cases in the facility, "there is potential for it to enter the prison in the near future.")
19. <u>Xichinua-Jones v. Barr,</u> No. 18-71460(9Th Cir. Mar 23, 2020) (Unpublished) (Sua Sponte releasing detainee from immigration detention "in light of the rapidly escalating public health crisis.")
20. <u>United States v. Avenatti,</u> No. 8:19-CR-61(C.D.Cal. Mar 25, 2020) (Sua Sponte inviting Defendant not move for reconsideration of a just-denied motion for release in light of the evolving nature of the COVID-19 pandemic.")
21. <u>United States v. Tovar,</u> No 1:19-CR-341-DCN, Dkt. No.42 (Idaho Apr 2, 2020) (releasing Defendant previously detained in presumption case after finding COVID-19 a compelling basis for release under §3142(i).)
22. <u>United States v. Davis,</u> No. 1:20-CR-9-ELH, Dkt. No. 21 (D.Md.Mar 30. 2020) (releasing Defendant due to the "urgent priority" of decarcerating, to protect both the Defendant and the community, and preserve the sixth amendment rights in this perilous time.")
23. <u>United States v. Michaels,</u> 8:16-CR-76-JVS, Minute Order, Dkt. No. 1061(C.D. Cal. Mar. 26,2020) ("Michaels has demonstrated that the COVID-19 virus and it's effect in California constitute "another compelling reason", justifying temporary release under§3142(i).)
24. <u>United States v. Perez,</u> No. 19-CR-297-2020WL 1329225(S.D.N.Y. Mar 19, 2020) (releasing Defendant due to the "heightened risk of dangerous complications should he contact COVID-19.")

25. <u>United States v. Stephens,</u> 2020WL 1295155,_F. Supp. 3d_(S.D.N.Y. Mar 19,2020) (releasing Defendant in light of "the unprecedented and extraordinary dangerous nature of COVID-19 pandemic.")
26. <u>United States v. Ramirez-Rodriquez,</u> Case No. 20-CR-28, Dkt.No.42 (D. Minn. Apr 14, 2020) (releasing 53-year-old undocumented diabetic immigrant with 15 prior removals, from jail with no confirmed COVID-19 cases because "it is just a matter of time before the first case is identified").
27. <u>United States v. Mahan,</u> Case No. 1:19-CR-223-DCN, DKt. No. 67(D.Idaho Apr 10,2020) (releasing 36 year old asthmatic defendant with significant criminal history, including aggravated assault and parole violations, charged in a 10 year mandatory minimum drug case due to the compelling risk posed by COVID-19).
28. <u>United States v. Campos,</u> No. 4:20-CR-341-DCN. No. 22(D.Ariz. Apr 2, 2020) (COVID-19 a changed circumstance justifying pre-trial release for a Defendant, facing a 20 year mandatory minimum and with ties to foreign country, accused of trafficking 24 Kilograms of cocaine).

Armando Castro
# 97595-004
Miami Federal Prison Camp
P.O. Box 779800
Miami, FL 33177



Paul G Rogers Federal Building
701 Clematis St. Room 2
West Palm Beach, FL 33

