UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO: 11-cr-80187- Bloom

United States of America

v.

Armando Antonio Castro,

Defendant



FILED BY ＿MCO＿ D.C.

NOV 30 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO

DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

 The Defendant Armando Antonio Castro hereby files his reply to Government 's response to his motion for compassionate release under 18 U.S.C. §3582 pro se in the above styled action and respectively invokes the rule established in Haines v Kerner, 404 U.S. 519 (1972)( Holding pro se litigants to less stringent pleading requirements). Also see Estelle v. Gamble, 428 U.S. 106 (1976).

 The Defendant disagrees with the Government's conclusion that his motion should be denied because of 18 U.S.C. §3553 (A) factors. He specifically meets all the qualifications, which the Government does concede this in their response, and therefore he should be granted the reduction that he is requesting.

REPLY IS TIMELY FILED

 The reply is timely filed since the Defendant did not receive the Government's response until November 17, 2020 by prison mail, which means the motion had to be filed within 10 days of receipt as per Rule of Criminal Federal Procedure. This was done by the defendant with a copy of his reply also being sent to the Assistant Attorneys' office.

1

## THE DEFENDANT DOES MEETS THE STANDARD FOR COMPASSIONATE RELEASE

As stated in the original motion filed with this court for compassionate release, the Defendant does in fact meet the "extraordinary and compelling standard" to be granted compassionate release. His extremely poor health as well as his age are substantiated in the motion and it just by the "grace of God" he has survived the less than adequate level of medical care that existed in the past and still currently exists within the Federal Prison System, in particular at Miami Camp. This fact has been documented in many news articles as well as all the cases filed for their maintaining of sub-standard living conditions. This in fact includes a lack of provision of adequate and proper health care to its inmates.

It is in fact indisputable that the defendant does meet the high standard for compassionate release and the government does concede to this in their response. This noted on page 10 of the last paragraph of that page of the government's response.

On this page, the government states the following:

" In addition to the defendant having attached to his pleading some of his medical records, the undersigned obtained the last two years of the defendant's medical records from the Bureau of Prisons (B.O.P.) and those are attached to a pleading separately under seal. The medical records indicate that the defendant has, among other medical issues, Type 2 diabetes and a chronic kidney disease. The government acknowledges that during the COVID-19 pandemic, an inmate who presents Type 2 diabetes or chronic kidney disease, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release".

This statement specifically confirms that in today's COVID-19 environment, the Defendant does meet the standard of "extraordinary and compelling". That factor supports Defendant's contention that he should be granted relief.

Additionally, although not mentioned here, the defendant also had lower back surgery, a fusion on 3 herniated discs, and 2 titanium bars. This was done at University of Miami Hospital in Miami, Florida on February 7, 2014, during his term of incarceration. Currently he is still not 100% free of pain and although not mentioned in the BOP medical records, he is supposed to have this surgery again in the future.

Furthermore, the government again states in their response on Page 10, second paragraph, the following:

"The Sentencing Commission has issued a policy statement addressing reduction of sentences under §3582 (c) (1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the §3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction,"(ii)"the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.§3142(g)", and (iii) "the reduction is consistent with this policy statement." U.S.S.G.§1B1.13."

Therefore, based upon its own statement above and the statement on the prior page of this reply, the government does in fact agree that the defendant does meet parts (i) and (iii). That means that the only issue that remains if in fact the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.§3142(g). This point is discussed in detail in the following section of the reply.

## THE DEFENDANT IS NOT A DANGER TO HIS COMMUNITY

Since the Defendant has satisfied the exhaustion requirement and the government did not bring up an argument to the contrary, the Court can now focus its analysis to the remaining considerations under §3582 (C)(1)(A)(i)- namely, the relevant §3553 factors. Again, as noted in the original brief, the following should now be considered.

The applicable §3553(a) factors include, among others : "(1) nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2)the need for the sentence imposed –(A)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B)to afford adequate deterrence to criminal punishment for the offense;(c)to protect the public from further crimes of the defendant." 18 U.S.C.§3553 (a).

These factors were enumerated in the landmark Supreme Court case of <u>Jason Pepper v. United States</u>, No. 09-6822, which argued on December 6, 2010 and was decided on March 2, 2011. The court decided that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's rehabilitation, and such evidence may, in appropriate cases, support a downward variance from the now-advisory guideline.

Consistent with this principle that " the punishment should fit the offender and not merely the crime, <u>Williams v. New York,</u>337 U.S.241,247, the court observed a consistent and uniform policy "under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed within the limits fixed by law," Id., at 246, particularly "the fullest information possible concerning the defendant's life and characteristics," id., at 247. That principle is codified at 18 U.S.C.§3661, which provides that "no limitation shall be placed on the information" a sentencing court may consider "concerning the defendant's background, character, and conduct," and at §3553(a), which specifies that sentencing courts must consider, among other things, a defendant's "history and characteristics,"§3553(a)(1).

Also specified in the instant case is the post sentencing rehabilitation evidence. The plain language of §3661 makes clear that there is "no limitation on background, character, and conduct" information, and it makes no distinction between an initial sentence and a subsequent sentence. In addition, post sentencing rehabilitation evidence may be highly relevant to several §3553 factors that district courts are required to consider at sentencing. Most

4

fundamentally, that evidence provides the most up-to-date picture of that defendant's "history and characteristics".

The problem is that the government in their response did not focus on what the Defendant did to improve himself in prison, but instead wove a tale of many erroneous and misstated facts. Yes, they did acknowledge on Page 11, on the third paragraph of the page, that the Defendant was in fact a good inmate and did not receive any violation and did so in a place where the theme is discipline and most inmates receive some kind of infraction, especially considering the number of years that Defendant spent in prison. In their response, the government did concede that Defendant did not have any problems when they stated the following.

"While Defendant has exhibited good behavior since the start of his incarceration (the BOP has no disciplinary history for the Defendant), he has served only about 70% of his sentence and still has approximately two years remaining". Although the part about having no disciplinary actions is correct, it includes misstatements as well.

The Defendant has served 80% of his sentence if you include his earned good time, which he is his due to his conduct record. Additionally, he does not have two years till he is released. As per his case manager at the FCI Miami Camp, Case Manager Gilbeaux, his halfway house release date is in November 2021, which is only one year from today. Considering his age and health, what purpose would be served by having the Defendant remain in custody of the BOP for another year? None that I can see.

Furthermore, rather than look at his rehabilitation effort, which was a lot and explained in detail in the original motion, the government seems to bypass this and conclude that the Defendant is a danger to his community. This rehabilitation includes many classes, which were both educational and assisted him in changing his attitude toward life and his fellow man. So, how does the government do this?

They do this by creating a misdirected image of the Defendant by using incorrect facts from the crime he committed and to not giving him any credit for rehabilitating himself.

This begins on page 2 of their response when the government purposely leaves out the fact that the Defendant had his sentence vacated by the Appellate Court for the Eleventh Circuit. This fact establishes that there was a problem with his sentence to such an extent that the Appellate Court originally vacated his sentence. Unfortunately, this was later reversed by the Appellate due to another similar case taking precedent even though the facts of that case was different than the instant case.

Next, on page 3 middle paragraph, the government cites that the Defendant ran a brothel. That is incorrect nor was the Defendant charged with this since he was not running a brothel, but rather he operated a ranch which sponsored a soccer team, pool tournaments, sold food and refreshments, such as beer and soda. This ranch was in a rural area on a dirt road. Workers from the area, near the city of Loxahatchee, worked in nurseries and horse farms and would come to relax after a hard day's work. That is not a brothel.

Then on the same page, the government describes the Defendant's crime with more false statements. The try to make him out to be a big arms dealer since he had a weapons charge. The reality of the situation was is that his weapon was the Ak-47 which was in fact broken in two pieces and used as a lamp. The D.A. took pictures of all the weapons that were allegedly sold, but not of the AK-47 that was used as a lamp. This was shown not shown in discovery to again distort the true picture of the Defendant.

Additionally, the Jimenez Arms Model J.A. 9mm pistol the government speaks of on page 5 fifth paragraph of their response was no more than a collectors' item. Again, there was no picture of this in discovery.

In essence, what happened was that the undercover agents just pressured and pressured and interpreted what they wanted even though the Defendant told them time and time again that he does not sell weapons or deal drugs. The fact is in the Presentence Investigation Report (PSI), the probation officer described the quantity drugs as a detectable amount. That is far from being a drug trafficker to any degree, let alone being a large dealer in the drug trade business. In fact, he applied and did not receive the plus 2 drug reduction as per Amendment 782 since the government acknowledged he was not a drug dealer.

Finally, the government, on Page 8 of their response brief, tries to display the Defendant has having no place to relocate to and hence allowing a former felon to enter the community without a place to live.

This is incorrect since the Defendant will be living with daughter Sheyla Castro who lives at 2198 Norwest 17 Street, Apt 3. Miami, Florida ,33125 and her phone number is 786-523-3460.

He will have income from two sources. One is social security and the other is from the United Transportation Union (U.T.U). Additionally, he will have the financial and emotional support of his two sons. Their names are Virgil A. Castro who is in the U.S. Air Force in Albuquerque, New Mexico and the other, Noel E. Castro, is a paramedic-fire fighter and who lives in Tampa, Florida.

Additionally, his continuing medical expenses will be covered by both by Medicare and Medicaid. This in turn means that he will not be a burden to his family or community.

So, how did in the government determine that he was a danger to his community. It was based on a small crime becoming a large crime. The document their contention, the government uses cases that were denied compassionate release.

Problem is that these cases are not comparable. In the case of <u>United States v. Stuyvesant,</u> F. Supp. 3d- No. O9-CR-60184-ALTMAN, 2020 WL 1865771, at *2(S.D. Fla April 14, 2020), the case involved over 5 Kilograms. This case as noted earlier involved a detectable amount of drugs.

In the case of <u>United States v. Rodriquez-Orejuela,</u> F. Supp. 3d-, No. 03-CR-20774-Moreno, 2020 WL 2050434, at *5 (S.D. Fla. Apr 28,2020), that defendant was a cocaine kingpin with an extensive sentence. Although the Defendant received a long sentence, he was far from a kingpin.

Finally, in the <u>United States v. Enformes,</u> 16-CR-20549-Scola (S.D. Fla Apr. 9,2020), the defendant was nursing home mogul and who had received a 20 year sentence. This likewise is not comparable.

Again, the Defendant is not contending he is perfect, far from it. The fact is that he has served his sentence to this point with no complaints. Yes, he has tried

many times to have his sentence reduced, which is within his constitutional given right, and has failed. However, this time it is different.

Yes, the burden is on him and he has met it. As discussed earlier, he has served over 80% of his sentence and he meets the requirements for compassionate release. The only factor that is holding him up is if he is fact a danger to his community.

As discussed in detail earlier in the motion, he is far from a large arms dealer and is drug quantity was nearly non-existent. So, he is not a drug trafficker either.

The other factor used to make him a danger was his prior domestic violence cases with his former wife. The fact is that his former wife signed a notarized affidavit saying that there was only one domestic violence incident and that she has no problem being around him now and still thinks very highly of him. The incident was in 2004 and the true culprit was the former wife, Esther Castro, who fired a 0.38 pistol at me and my niece, Maria Luisa Mendez. She, Esther Castro, was arrested, and booked in West Palm Beach Court Jail. I did not file attempted murder charges because she is the mother of my two boys, and I as my wife, did not want to harm her.

The above paragraphs show that I have in fact met my burden. Additionally, just as important was that the BOP did change my custody level when I was transferred from a low facility to a prison camp, which is minimal security. Again, that shows how much I have changed as person and that in fact the BOP agreed with that assessment.

I am aware that compassionate release cases have flooded the court houses due to COVID-19 and as documented in my compassionate release motion, many have been granted including one you did within your court, United States v. Torres, No. 19-CR-20342- WL 4019038 (S.D. Fla July 14, 2020). I humbly request that mine be granted as well.

## CONCLUSION

I humbly request that this court grant my request for compassionate release and reduce my current sentence to time served.


Respectively submitted,

*A. Castro*        11/26/2020
Armando Antonio Castro      Date

97595-004

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a copy of said motion to the following interested party.

Marton Gyires

Assistant United States Attorney

Court ID No.: A5501696

500 Australian Avenue, 4th Floor

West Palm Beach, Florida 33401

*A. Castro*                    11/26/2020

Armando Antonio Castro         Date






**PRIORITY MAIL 1-DAY™**

PAUL ROGERS FEDERAL BUILDING
701 CLEMATIS ST RM 202
WEST PALM BCH FL 33401-5113

Expected Delivery Date: 11/28/20

0021

C028

SHIP TO:

PAUL ROGERS FEDERAL BUILDING
701 CLEMATIS ST RM 202
WEST PALM BCH FL 33401-5113

**USPS TRACKING #**



9405 5036 9930 0142 7936 23

Electronic Rate Approved #038555749

packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.