**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 11-cr-80187-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

ARMANDO ANTONIO CASTRO,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Armando Antonio Castro's ("Defendant") Emergency Motion for Compassionate Release Pursuant to 3582(c) or, in the Alternative, Judicial Recommendation for Home Confinement Pursuant to 3621(b)(4)(B), ECF No. [139] ("Motion"), filed on October 28, 2020. The Government filed its Response, ECF No. [141], to which Defendant has filed a Reply, ECF No. [143]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case and the applicable law, and is otherwise fully advised, for the reasons discussed below, the Motion is granted.

### I.    BACKGROUND

On October 25, 2011, Defendant was charged in a 14-count indictment with five counts of the following violations: possessing with intent to distribute marijuana in violation of 21 U.S.C. § 842(a)(1) (Counts 1, 3, 5, 9, 12); one count of possessing with intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D) (Count 13); two counts of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Counts 2, 4); four counts of possessing a firearm in violation of a court order in violation of 18 U.S.C. §§ 922(g)(8), 924(a)(2) (Counts 6, 7, 10, 11); one count of possessing a

firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) (Count 8); and one count of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 14). ECF No. [3]. On February 10, 2012, Defendant pleaded guilty to Counts 1, 2, 3, 7, 10, 13 and 14 of the Indictment. *See* ECF No. [43]. Defendant was sentenced to a term of imprisonment of 156 months, followed by 5 years of supervised release on April 26, 2012. *See* ECF Nos. [58], [80]. Defendant has been in custody since his arrest on October 26, 2011 and has a projected release date of November 22, 2022. Defendant is currently housed at the minimum security satellite camp at FCI Miami in Miami, Florida.

In the Motion, Defendant requests a reduction in sentence to time served or release to home confinement pursuant to 18 U.S.C. 3621(b)(4)(B), due to the ongoing COVID-19 pandemic, arguing that his underlying medical conditions put him at an increased risk of serious illness or death should he contract the virus. The Government opposes the Motion, arguing that compassionate release is not warranted in this case because the § 3553(a) factors do not support a sentence reduction, and Defendant remains a danger to the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 25,018,520 confirmed cases and nearly 418,000 reported deaths as of January 25, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 25, 2021).

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

4

> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

As has been recognized by various courts, the Sentencing Commission has not implemented a new policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases)). Rather, the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.4. As noted by one district judge in *Brown,* "[T]his leaves district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission—unable to take any official action—has not made the policy statement for the old regime applicable to the new one." *Id.*

While the Eleventh Circuit has yet to address the issue, four Circuits have recognized that the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release, and that § 1B1.13 does not apply to cases in which a defendant files a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020) ("[T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098, 1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for

compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."). As such, the Court is not bound by § 1B1.13.

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). With these standards in mind, the Court considers the instant Motion.

Case No. 11-cr-80187-BLOOM

### III.   DISCUSSION

#### A. Exhaustion of Administrative Remedies

On July 30, 2020, Defendant submitted a request for compassionate release to his institution. ECF Nos. [139-1] at 7, [141-1]. On September 21, 2020, Defendant's request was denied because he did not qualify pursuant to BOP Program Statement number 5050.50. ECF No. [141-2]. Defendant filed the instant Motion on October 28, 2020, and therefore has exhausted his administrative remedies.[2]

#### B. Extraordinary and Compelling Circumstances

Defendant argues that extraordinary and compelling circumstances exist in his case because his age and health conditions coupled with the coronavirus pandemic increase his risk of severe illness or death from COVID-19. In pertinent part, Defendant is 72 years old, and suffers from Type 2 diabetes, hypertension, obesity, and chronic kidney disease. The Government concedes that Defendant's documented diabetes and chronic kidney disease constitute extraordinary and compelling circumstances in this case. *See* Response at 10. Indeed, CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes.[3] Based upon Defendant's age and

---

[2] The Government agrees that Defendant has satisfied this step of the § 3582 analysis.

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

7

medical conditions, he has sufficiently demonstrated that extraordinary and compelling circumstances exist in his case.[4]

In addition, FCI Miami, where Defendant is housed, is currently reporting 97 COVID-positive inmates, and 31 COVID-positive staff, one inmate death and no staff deaths.[5] BOP reports further that 140 inmates and 22 staff have recovered from the virus.[6] Thus, of a total inmate population of 847, almost 28% have contracted the virus and it does not appear that current measures at FCI Miami are effectively managing the virus at this time.

### C. Section 3553(a) Factors

Nevertheless, the Court must consider the relevant § 3553(a) factors. The applicable sentencing factors under § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

---

[4] In addition, in correspondence addressed to the Court, Defendant's daughter, his sister, and his niece have indicated that Defendant has tested positive for COVID-19 since filing the Motion. *See* ECF Nos. [144], [145], [146].

[5] https://www.bop.gov/coronavirus/ (accessed January 26, 2021).

[6] *Id.*

18 U.S.C. § 3553(a). Nonetheless, this does not end the Court's inquiry.

> Because a defendant's sentence reflects the sentencing judge's view of the [section] 3553(a) factors at the time of sentencing, the time remaining in that sentence may — along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates — inform whether immediate release would be consistent with those factors.

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

The Government argues that the § 3553(a) factors weigh against granting Defendant relief because his early release would minimize the severity of the offense of conviction, he has served approximately 70% of his sentence, and that based on his conduct in the underlying offense and numerous domestic violence related incidents, he continues to pose a danger to the community. Defendant disagrees, arguing that the domestic violence incidents arose as a result of contentious divorce proceedings with his ex-wife, who has since recognized that they were both responsible for their domestic problems and that she remains supportive of Defendant, *see* ECF No. [139-1] at 4, and that the Government improperly ignores the rehabilitative efforts he has undertaken while incarcerated.

The Court agrees with the Government that Defendant's underlying offense in this case and the domestic violence incidents in his background are extremely serious and not to be overlooked.[7] Indeed, as recited by the Government in its Response, Defendant was identified in late 2009 as the operator of an illegal prostitution house/brothel at his rental property as part of an

---

[7] In his Reply, Defendant asserts that "the government in their response did not focus on what Defendant did to improve himself in prison, but instead wove a tale of many erroneous and misstated facts," proceeds to enumerate the facts regarding his underlying offense conduct which he contends the Government distorts, and provides additional detail regarding the domestic violence. *See* ECF No. [143] at 5-8. The Court notes, however, that in his effort to zealously advocate for himself, Defendant overlooks that he admitted to the facts as recited by the Government, which were contained in his Presentence Investigation Report ("PSR"), in addition to the domestic violence incidents documented by the probation officer. Thus, to the extent that Defendant is disputing those facts and incidents now, his attempts to do so are improper.

investigation into human trafficking. *See* ECF No. [141] at 3. In addition, Defendant was the respondent of a non-expiring order of protection—a domestic violence injunction—which prohibited him from possessing firearms or ammunition. *Id*. Over the course of 2010 and 2011, in addition to operating the brothel, Defendant sold drugs (cocaine and marijuana) and numerous stolen firearms and ammunition to two Palm Beach County Sheriff's Office deputies working in an undercover capacity. *Id*. He also offered the deputies prostitution services, stating that he could obtain women from any race and cultural background. *Id*. In spite of the domestic violence injunction, Defendant was observed on multiple occasions carrying a firearm. *Id*. at 3-4. Moreover, Defendant has a history of domestic violence incidences against his wife beginning in 2003, and re-occurring through 2007 and 2008, in addition to an instance in which he was armed during an argument with his landlord over the use of a garage. At the time of sentencing, the Court considered all relevant § 3553(a) factors and concluded that a term of imprisonment of 156 months was appropriate based upon Defendant's underlying offense conduct, in addition to his running brothels with immigrant prostitutes, eight instances of domestic violence, and his advanced age at the time of committing the offenses. *See* ECF No. [80] at 13. While the Court does not overlook Defendant's serious background and offense conduct, the Court also takes into account Defendant's more recent conduct.

Defendant has been in custody since his arrest on October 26, 2011. He was sentenced on April 26, 2012 and has served approximately 111 months of his 156-month sentence. Defendant asserts that he has participated in numerous rehabilitative programs and classes, including classes in business, computers, language, and parenting, he has been active in the religious community, worked as an orderly and in recreation, and participated in an Alternative Inmate Network program designed for inmates who want to change their lives, consisting of a separate housing unit and

additional class requirements.[8] In addition, Defendant has no disciplinary record while incarcerated, which the Government acknowledges, and Defendant is currently housed in a minimum security satellite camp adjacent to the main correctional complex at FCI Miami. Upon review, the Court finds that these rehabilitative efforts weigh in favor of Defendant's release, especially in light of the substantial length of time Defendant has already served, and his lack of disciplinary history while incarcerated. *United States v. Camacho*, No. 2:11-CR-00085-01, 2020 WL 4498796, at *3 (W.D. La. Aug. 4, 2020).

Additionally, the Court considers these factors in the context of Defendant's medical conditions and the extraordinary and compelling circumstances in this case. "When the Court sentenced [the defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v. Zukerman*, No. 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020)). Upon consideration of the entire record in this case, and in light of the lengthy sentence Defendant has already served, the Court concludes that a sentence reduction is not inconsistent with the goals of sentencing—to adequately reflect the seriousness of Defendant's conduct, promote respect for the law, provide just punishment for his offenses, and afford adequate deterrence to criminal conduct. *See United States v. Scott*, No. CR 1:02-00241-01, 2020 WL 4905749, at *3 (S.D.W. Va. Aug. 19, 2020). As such, the applicable §3553(a) factors overall weigh in favor of granting Defendant's Motion.

Turning to whether Defendant poses a danger to the safety of the community, the Court considers the following factors:

---

[8] Although Defendant has not provided documentation supporting his assertions, the Government has not disputed Defendant's representations. Because Defendant is proceeding *pro se* and the lack of evidence to the contrary, the Court will accept his representations with respect to his efforts at rehabilitation.

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
    (2) the weight of the evidence against the person;
    (3) the history and characteristics of the person, including—
        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
        (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, 456 F. Supp. 3d 420, 430 (N.D.N.Y. 2020)).

    Upon review, the Court concludes that, notwithstanding the underlying offense conduct and domestic violence incidents in his past, Defendant no longer poses a danger to the safety of the community due to his disciplinary record while in custody, his rehabilitative efforts, and current housing at a minimum security satellite camp. These rehabilitative efforts, as explained above, weigh in favor of Defendant's request for release. *See United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (concluding that, "given [Defendant's] age, serious health problems, the substantial amount of time he has already served, and his exemplary prison record, factors which are now a part of his history and characteristics, the Court finds that the risk of him engaging in further criminal conduct is minimal and can be managed through . . . the terms of his supervised release"). To be sure, the Court reiterates that Defendant's underlying offense conduct is serious, and the Court does not discount the numerous incidents of domestic violence documented in Defendant's past. Nevertheless, the Court notes that the last incident occurred approximately thirteen years ago and three years before his arrest in this

case. In addition, in spite of the documented incidents, Defendant's family remains supportive of him. *See* ECF Nos. [144], [145], and [146]. Indeed, Defendant asserts that if he is granted compassionate release, he will live with his daughter, Sheyla Castro in Miami, and that he will have financial and emotional support from his two sons, Virgil A. Castro and Noel E. Castro.

In the Court's view, Defendant's more recent conduct is indicative of the risk he currently poses to the safety of the community, and his more recent behavior weighs in favor of his release. In addition, because of Defendant's advanced age, the likelihood of recidivism is low, and, if released, Defendant is subject to a five-year term of supervised release. *See United States v. Johnson*, No. 4:00-cr-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (noting that, in light of the relevant factors, "the Court does not believe that Defendant is likely to recidivate or that he would otherwise pose a danger to the community. Any potential risk to the community will be managed by a term of supervised release." (citing *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *5 (N.D. Iowa Jan. 8, 2020))); *see also Williams*, 2020 WL 1751545, at *3. Thus, contrary to the Government's position, the Court does not find that Defendant would pose a danger to the community if released.

The Court determines that Defendant has sufficiently satisfied each of the four compassionate release considerations. Therefore, Defendant's Motion is granted, subject to the conditions set forth below.[9]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [139]**, is **GRANTED**.

---

[9] Because the Court grants Defendant's request for compassionate release, the Court does not consider his alternative request for home confinement.

2. Defendant's term of imprisonment is reduced to **TIME SERVED** as of the date of this Order. The Defendant shall be placed on supervised release consistent with his previous Judgment and sentence, ECF No. [58]. All previous conditions imposed in the Judgment remain in full force and effect.

3. The Federal Bureau of Prisons is directed to release Defendant immediately to the custody of his daughter, Sheyla Castro, after the United States Probation Office approves his release plan. Defendant is responsible for arranging his own transportation to his daughter's home and, once released, must proceed directly to quarantine for fourteen (14) days.

4. Defendant must report via telephone to the U.S. Probation Office **within seventy-two (72) hours** of his release from BOP custody.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 26, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Armando Antonio Castro, *pro se*
97595-004
Miami FCI
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 779800
Miami, Florida 33177